MICHAEL F. AND MELANIE R. McKENZIE, ET AL.
v.
THE LAKE PONTCHARTRAIN BASIN FOUNDATION MARITIME MUSEUM, ET AL.
No. 2007 CA 1288.
Court of Appeals of Louisiana, First Circuit.
June 6, 2008.
Not Designated for Publication.
HECTOR R. LOPEZ COVINGTON, LA, Counsel for Plaintiffs/Appellees Michael and Melanie McKenzie, Joel Wilson, Lydia Voight and William Thornton, Jr.
WALLACE KENT PORTER MADISONVILLE, LA, Counsel for Defendants/Appellants Frank Crain and Tchefuncte River Tours, L.L.C.
DAVID CRESSY MANDEVILLE, LA, Counsel for Defendant/Appellant Lake Ponchartrain Basis Maritime Museum, Inc.
F. PIERRE LIVAUDAIS MANDEVILLE, LA, Counsel for Defendant/Appellant Town of Madisonville.
Before: WHIPPLE, GUIDRY, and HUGHES, JJ.
HUGHES, J.
This is an appeal of a judgment from the 22nd JDC, signed on January 9, 2007, that granted a preliminary injunction, denied a request for a new trial,[1] and denied requests for attorney's fees relative to a previously granted temporary restraining order. For the following reasons, we affirm the judgment of the district court.

FACTS AND PROCEDURAL HISTORY
On October 8, 1992, Restrictive Covenants for Lots 1-17 of Mabel Drive Subdivision were signed by the owners Jack Blossman and Raleigh Pendleton Blossman. Those covenants were recorded in St. Tammany Parish the next day. On January 3, 1994 a Cash Sale was executed wherein Raleigh Pendleton, wife of/and Jack Blossman sold Lots 16 and 17 of the Mabel Drive Subdivision to the Town of Madisonville. Thereafter, on May 31, 1996, the Town of Madisonville and the Lake Pontchartrain Basin Maritime Museum, Inc. (LPBMMI) entered into a management agreement to build and administer the Lake Pontchartrain Basin Maritime Museum and Research Center on that property. On October 7, 2004, the LPBMMI, Frank Crain and Tchefuncte River Tours, LLC (TRT) entered into an agreement that purportedly allowed TRT to dock and operate a 130-foot long paddlewheel boat, the Cotton Blossom, from its dock located on Lot 16 of the Mable Drive Subdivision. The Cotton Blossom was to provide cruises to the general public for a fee. The contract further called for the cutting of a slip for the mooring of the Cotton Blossom.
On October 11, 2004, the McKenzies and several other lot owners in the Mabel Drive Subdivision filed a petition for injunctive relief and for damages, naming LPBMMI, the town of Madisonville, Frank Crain, and TRT as defendants. The petition alleged that Mabel Drive Subdivision is governed by certain restrictive covenants which specifically prohibit the activity contemplated by the contract between LPBMMI and TRT. Specifically, the covenants state that there is to be no "commercial recreation" and that "[n]o owner will allow any vessel to be docked in front of his property which is longer than his lot width, without the permission of his neighbors on both sides of his lot...." The covenants also contain stipulated "setback restrictions." Plaintiffs prayed for a temporary restraining order, a preliminary injunction, and a permanent injunction.
On October 12, 2004 an order issued granting the TRO. Frank Crain and TRT filed an answer and reconventional demand on November 12, 2004, as did LPBMMI on November 15, 2004. The town of Madisonville filed exceptions raising the objections of prescription and no cause of action. Thereafter, LPBMMI filed a motion to join in Madisonville's objection of prescription. In response to the reconventional demands, plaintiffs filed an objection raising the exception of prematurity. All exceptions were heard on May 13, 2005 and a judgment issued on August 7, 2006 wherein all exceptions filed by defendants were denied and the exception filed by plaintiffs was sustained.
Between July 12 and July 18, 2006, three of the four defendants filed notices of intent to dissolve and/or modify the TRO and for attorney's fees. On August 17, 2006 Frank Crain and TRT filed a motion for new trial from the court's granting of plaintiffs exception raising the objection of prematurity in response to their reconventional demand. All matters were set and heard on August 18, 2006, including the motion for the dissolution of the TRO and for attorney's fees associated therewith, the issuance of the preliminary injunction requested by plaintiffs, and the motion for new trial filed by Frank Crain and TRT, Inc. At the hearing, the court took notice that the TRO had in fact expired long ago by operation of law. In open court the parties requested and were granted an additional thirty days to procure several depositions and to submit post-trial memoranda, after which the matter would be submitted. A written judgment was rendered on January 9, 2007. Pursuant to that judgment, the preliminary injunction was granted, "prohibiting all defendants from violating the restrictive covenants." The judgment also denied the motion for new trial along with any requests for attorney's fees associated with the issuance of the TRO.[2] All defendants appeal the January 9, 2007 judgment, and collectively make the following assignments of error:
1. The trial court erred in issuing a TRO without requiring the appellees to post a bond;
2. The trial court erred in failing to hold a hearing on the Petition for Preliminary Injunction;
3. The trial court erred in granting the preliminary injunction" without the benefit of any evidence from the plaintiffs or their making a prima facie case." Specifically, appellants allege that the appellees did not show irreparable loss and that there were other less extreme remedies available.
4. The trial court erred in finding that Madisonville was a party to the contract between the Museum, Crain, and TRT.
5. The trial court erred in applying the restrictive covenant, which is allegedly applicable only to a lot that lies between two other lots, to a corner lot.
6. The trial court erred in failing to define the term "commercial recreation."
7. The trial court erred in overruling the exception of prescription.
8. The trial court erred in enjoining appellants from cutting a slip into Lot 16 as that issue was allegedly never before the court.
9. The trial court erred in denying appellants' requests for attorney's fees.

Assignment of Error No. I-The Alleged Failure to Require the Posting of a Security Bond
Appellants Frank Crain and TRT make the allegation that the trial court erred in its granting of a Temporary Restraining Order, or extensions thereof, because it did not require the posting of a security bond. The only judgment before us on appeal is the January 9, 2007 judgment, which makes no mention of the TRO. This assignment of error is not reviewable in this appeal. However, we note that a bond was in fact ordered.

Assignments of Error Nos. 2,3, 5,6, and 8-Alleged Errors in the Issuance of the Preliminary Injunction
In these assignments of error, appellants argue that the issuance of the preliminary injunction was improper and make the following arguments:
1. The trial court issued the injunction without holding a hearing;
2. The plaintiffs did not make a showing of irreparable harm;
3. The trial court erred in its interpretation of the restrictive covenants and specifically failed to define "commercial recreation"; and
4. The trial court erred in enjoining appellants from cutting a slip into Lot 16 because plaintiffs did not request that relief in their petition.

The Hearing
Appellants allege a procedural defect in the litigation and assert that there was no hearing on the preliminary injunction. However, a hearing was in fact held. Counsel for all appellants were present, including Wallace Porter, Pierre Livaudais, and David Cressy. They requested an additional thirty days to obtain the depositions of Jack Blossman and Trilby Lenfant for submission into evidence. The court granted that request and asked: "Now, any other evidence that needs to be presented into the record so that I will be able to take this matter and finally rule on it?" The attorneys then offered additional evidence, including the deposition of Michael F. McKenzie, the contract between the Lake Pontchartrain Basin Maritime Museum Research Center and TRT, the restrictive covenants at issue, and a plot map of Mable Drive Subdivision. The court then established the time restraints for post-trial memoranda and the hearing was concluded. No objection to this procedure was made. This assignment of error is without merit.

Irreparable Harm and the Restriction Interpretation Issues
Although we note that the trial court's written reasons for judgment make clear that the court did find the requisite irreparable harm for the issuance of a preliminary injunction under LSA-C.C.P. art. 3601, et seq., we note that not all preliminary injunctions require this showing. Specifically, LSA-C.C.P. art. 3663 provides, in part, that:
Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right therein, is available to:
***
(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right therein of which he claims the ownership, the possession, or the enjoyment.
Because building restrictions are real rights that run with the land, LSA-C.C. arts. 775, 777, Country Club of Louisiana Property Owners Association, Inc. v. Dornier, 96-0898 (La. App. 1 Cir. 2/14/97), 691 So.2d 142, 147, plaintiffs in this case were not required to make a showing of irreparable injury. Further, documents establishing building restrictions are subject to enforcement as are contracts. Country Club of Louisiana, 691 So.2d at 147. Plaintiffs alleged that their right of enjoyment and possession of their property would be disturbed by the activities of the Cotton Blossom as well as the cutting of the proposed slip for the mooring of the boat. They further alleged their right to protection from such actions by the building restrictions. Louisiana Code of Civil Procedure article 3663 is applicable under these circumstances and as such, although the trial court did find irreparable injury in this case, plaintiffs were not required to meet that burden. We therefore find that this assignment of error lacks merit.
Regarding the arguments of appellants concerning the interpretation of the building restrictions, we note that the judgment on appeal concerns only the issuance of a preliminary injunction.[3] The matter is still pending below for a full trial on the merits before a permanent injunction will issue. We also note that "appellate review of a trial court's issuance of a preliminary injunction is limited. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown." Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 04-0270, 04-0249 (La. App. 1 Cir. 3/24/05), 906 So.2d 660, 663, citing Lassalle v. Daniels, 96-0176, p. 5 (La. App. 1 Cir. 5/10/96), 673 So.2d 704, 708.
Considering the lot width and boat length, that the restrictions apply to all lots in Mable Drive including Lot 16, and that the activity contemplated by the Cotton Blossom is certainly commercial and recreational, we cannot say that the trial court abused its discretion in issuing the preliminary injunction.

The Lot 16 Slip
We likewise are not persuaded by appellant's argument that the issue of the proposed mooring slip for the Cotton Blossom was not before the trial court. Plaintiffs filed the October 2004 petition alleging that appellants were in violation of the restrictive building covenants. Specifically, plaintiffs allege that the Town of Madisonville and LPBMMI planned to ratify the contract between them and Frank Crain and/or TRT concerning the Cotton Blossom and that the ratification of the contract "will cause irreparable injury and loss to [plaintiffs] in that their property rights, subdivision restrictive covenants, and municipal zoning ordinances will be indefinitely derogated." Further, the petition prayed that the appellants be prohibited from "using, utilizing, occupying and possessing, either whole or in part, property and rights running with Lot 16 and/or Lot 17 for any purpose." The issue of the slip was addressed throughout the litigation. In fact, the issue of the slip was specifically referenced by the court at the August 18, 2007 hearing. Further, in the trial court's written reasons for judgment, the court specifically found that irreparable damage would be caused to the river front "with the creation of a 60' cut into lot 16." We find no abuse of discretion in this action. This assignment of error lacks merit.

Assignment of Error Nos. 4 and 7-The Trial Court's Rulings on the Exceptions
The exceptions raising the objections of prescription and no cause of action came before the court for hearing on May 13, 2005. In a judgment signed on August 7, 2006 all exceptions were denied. The only judgment appealed by the appellants is the judgment of January 9, 2007. In that judgment, the trial court made no ruling on these issues, and therefore these issues are not properly before us in this appeal.
Assignment of Error No. 9-The Trial Court's Denial of Attorney's Fees
Louisiana Code of Civil Procedure article 3608 states that:
The court may allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of a restraining order or preliminary injunction may be included as an element of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits.
The statutory language is clear. The decision to award attorney's fees in association with the dissolution of a TRO is at the discretion of the trial court. Based on the record, and especially considering that the trial court granted the preliminary injunction sought in this matter, we find no abuse of discretion on the part of the trial court in the denial of attorney's fees. However, this issue may be re-urged after trial on the merits of the permanent injunction.

CONCLUSION
We find no error in the trial court's issuance of the preliminary injunction in this matter. The judgment of January 9, 2007 is affirmed in all respects. All costs of this appeal are assessed to appellants.
AFFIRMED.
NOTES
[1] The motion for new trial was filed on August 17, 2006 by defendants/appellants, Frank Crain and TRT. The motion requested a new trial relative to the sustaining of the exception of prematurity filed by plaintiffs/appellees in response to appellants' reconventional demand. Appellants, Frank Crain and TRT make no assignments of error as to the trial court's denial of the motion for new trial, and that issue is therefore not addressed in this appeal.
[2] Although all matters were heard at the August 18, 2006 hearing, two judgments were signed. The first, signed on September 8, 2006, essentially denied plaintiffs' motion to extend the TRO dated June 28, 2006, due to the fact that the TRO had expired, and the second, dated January 9, 2007, simply denied "any request for reimbursement of any attorney's fees requested by any party in the issuance of the Temporary Restraining Order." Neither judgment affirmatively denies the requests for dissolution of the TRO since, as reflected by the transcript of the trial, the court determined said motions to be moot due to the expiration of the TRO by law.
[3] Pursuant to LSA-C.C.P. art. 3612, while there is no appeal from an order relating to a temporary restraining order, "[a]n appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction, but such an order or judgment shall not be suspended during the pendency of an appeal unless the court in its discretion so orders." Therefore, the appeal of the preliminary injunction is properly before us.