STEWART J.
| ¶ David R. Romero (the “plaintiff’) is appealing the trial court’s judgment rendered in favor of the Caddo Parish Commission (the “CPC”), dismissing his request for the issuance of a preliminary injunction to enjoin the construction and improvement of a water line (the “Golds-berry Road Water Line Project”). For the reasons discussed below, we find that the trial court did not err in denying the preliminary injunction, and we affirm the trial court’s judgment.
FACTS
Pursuant to Resolution No. 19 of 2012, the CPC approved a Notice of Intention to construct and improve a waterline on certain property located in Caddo Parish as provided by Section 52-150 of the Caddo Parish Code of Ordinances. On June 7, 2012, the CPC adopted Local Assessment Ordinance No. 47 of 2012, ordering the construction and improvement of a waterline within the right-of-way of a portion of Goldsberry Road being located in a portion of Lots 7, 14, 16, 17, and 20, of Shadow Pines Estates, Unit 1; Lots 1, 10, 11 and 12, of Shadow Pines Estates, Unit 2; Lots 1, 2, 3, and 4, of Shadow Pines Estates Unit 5; and Lots 5, 6, 7, 8, 9, 10, 11, 12, of Shadow Pines Estates, Unit 6, said subdivision being located in Section 34, Township 16 North, Range 13 West, Caddo Parish for the year 2012. The plaintiff is the owner of Shadow Pines Estates, Lot 10, Unit 6.
The north side of Goldsberry Road intersects with Harris Lane, while the south side intersects with Goldsberry Circle. The proposed Goldsberry Road Water Line Project consists of an 8-inch water line pipe that runs from |2a “stub-out”[1] reducer off of a 24-inch line, on the north side of Goldsberry Road, and travels south along the eastern side of Goldsberry Road down to its southern end. Properties on the western side of Goldsberry are to be connected by drilling under the street. Fire hydrants and an 8-inch stub-out are to be located at the intersections with Harris and Goldsberry Roads, and every other 500 feet along the remainder of the project.
The plaintiff sought a preliminary injunction, and ultimately a permanent injunction, to prevent the CPC from proceeding with the Goldsberry Road Water Line Project. More specifically, he sought to restrain the CPC from proceeding with the construction and improvement of a water main within a portion of the right-of-way for Goldsberry Road, located in Caddo Parish. The plaintiff asserted that the CPC lacked the statutorily required consent of 60% of owners of affected properties. The plaintiffs petition was filed on July 6, 2012.
The trial was held on July 25, 2012. The trial court issued a judgment in favor *809 of CPC, denying the plaintiffs request for the issuance of a preliminary injunction. This appeal ensued.
LAW AND DISCUSSION
As his sole assignment of error, the plaintiff argues that the trial court erred in excluding from its calculation all of the frontage of a lot (Lot 5, Unit 1), or alternatively all of the frontage of the subdivision, abutting the street or right-of-way along which the proposed water line is to be constructed. He contends that the requirement of the applicable statutory |aauthority was not met. He refers to La. R.S. 33:3822, which states that the governing authority of a parish may construct a water line upon petition of property owners comprising not less than 60% of the frontage of all lots or parcels of real estate abutting the street or right-of-way along which a proposed water line is to be constructed. ■
An injunction proceeding is an ordinary proceeding in which the plaintiff seeks a permanent injunction compelling the defendant to do an act or barring him from acting. It invariably includes summary proceedings-the temporary restraining order (TRO) and the preliminary injunction to compel or bar the disputed act pending a determination on the merits of the ordinary proceeding. Thus, the TRO and the preliminary injunction may only be obtained as adjuncts to a suit for permanent injunction. Injunctive relief may be granted in cases where irreparable injury, loss or damage may otherwise result to the applicant, and in other cases specifically provided by law. La. C.C.P. art. 3601; Frank Maraist, lA La. Civ. L. Treatise, Civil Procedure-Special Proceedings, § 1.2 (2012 ed.).
A preliminary injunction is an interlocutory procedural device designed to preserve the existing status quo pending a full trial on the merits of the case. Longleaf Inv., L.L.C. v. Cypress Black Bayou Recreation Ctr. & Water Conservation Dist., 48,180 (La.App.2d Cir.6/26/13), 118 So.3d 505; State ex rel. Caldwell v. Town of Jonesboro, 47,896 (La.App.2d Cir.12/19/12), 108 So.3d 217, writ denied, 13-0173 (La.1/23/13), 105 So.3d 60. An applicant for a preliminary injunction has the burden of making a prima facie showing that he will prevail on the merits of the case, i.e., that 14he will obtain a permanent injunction based upon proof of irreparable injury. Longleaf, supra, White v. St. Elizabeth B.C. Bd. Of Dir., 45,213 (La.App.2d Cir.6/2/10) 37 So.3d 1139. A showing of irreparable injury is not necessary, however, when the conduct sought to be restrained is unconstitutional or unlawful, i.e., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or violation of a constitutional right. State ex rel. Caldwell, supra; Jurisich v. Jenkins, 99-0076 (La.10/19/99), 749 So.2d 597. The trial court has great discretion in granting or denying a preliminary injunction. Willis-Knighton Health Sys., Inc. v. Northwest Council of Gov’ts, 48,141 (La.App. 2 Cir. 4/10/13), 116 So.3d 55; Louisiana Granite v. LA Granite Countertops, L.L.C., 45,482 (La.App.2d Cir.8/18/10), 47 So.3d 573, writ denied, 2010-2354 (La.12/10/10), 51 So.3d 733; Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 04-0270 (La.App.1st Cir.3/24/05), 906 So.2d 660.
Both parties agree that the applicable statutory authority to construct the water line is La. R.S. 33:3822 et seq. La. R.S. 33:3822 states in pertinent part:
The governing authority of any parish, municipality or waterworks district is hereby vested with full power and authority, after having been petitioned by sixty percent of the resident property *810 owners of any such political subdivision, or by a vote of a majority in number and amount of the resident property taxpayers qualified to vote under the constitution and laws of this state who vote at an election held for that purpose in the manner provided by R.S. 39:501 through 39:518, in the discretion of the governing authority, to establish, acquire, construct, improve, extend and maintain with said political subdivision a waterworks system or systems ... or, if the area which is to be served be an area within a parish, municipality or waterworks district already having water facilities or which may be able to acquire such facilities, within or without such \ ¡(political subdivision, then by the petition of the property owners in such area owning property comprising not less than sixty percent of the frontage of all lots or parcels of real estate to be improved or benefited by the laying of such water lines or the installations of such improvements. (Emphasis added.)
Further, La. R.S. 33:3826 states in part:
If a local or special assessment has been levied the report shall also show the amount of the cost chargeable to each lot or parcel of real estate to be improved or benefited in the proportion that its front footage bears to the total front footage to be assessed, as shall be determined by the governing authority, provided, however, that where any water line is constructed upon more than one side of any lot or parcel of real estate, the total front footage of such lot of parcel of real estate to be assessed shall be determined by taking the total front footage of said lot or parcel of real estate abutting all water lines to be constructed and dividing such total front footage by two. The report shall further describe each lot or parcel of real estate to be assessed with sufficient clearness to identify it. The words “front footage” as used in R.S. 33:3822 through 33:3835 shall mean the footage of each lot or parcel of real estate abutting the street or right of way along which the water line is constructed. (Emphasis added.)
Section 52-150 of the Caddo Parish Code of Ordinances states:
Sec. 52-150. Construction, extension of waterworks systems.
It is hereby declared to be the policy of the Caddo Parish that in all extensions of waterworks systems authorized by Caddo Parish under the authority of La. R.S. 33:3822, the Parish shall assume 10% of the cost of any such improvements and the adjoining property owners shall assume 90% thereof.
The plaintiff and CPC stipulated in open court that if the calculations included the front footage of Lot 5, Unit 1 in its entirety, then the Goldsberry Road Water Line Project would only have been petitioned by 59.36% of the landowners, lacking the required 60% pursuant to La. R.S. 33:3822. Apparently, the owner of the lot at issue had not agreed to this project at the time of the adoption of the ordinance. In the event that the lot Ris not included in the calculations, the parties in this matter stipulated that the project met La. R.S. 33:3822s requirements.
The 60% requirement stated in La. R.S. 33:3822 refers to the “frontage of all lots or parcels of real estate to be improved or benefited by the laying of such water lines or the installations of such improvements.” La. R.S. 33:3826, which discusses levying assessments to each lot or parcel of real estate to be improved or benefited, states that “the words ‘front footage’ as used in R.S. 33:3822 through 33:3835 shall mean the footage of each lot or parcel of real estate abutting the street or right of way along which the water line is constructed.” *811 After reading La. R.S. 33:3826 as a whole, we can easily ascertain that the “front footage” definition is only applicable to those lots that will be improved or benefited.
The plaintiff argues that the CPC erred in including only the portion of Lot 5, Unit 1, that abuts the proposed water line in its calculation, rather than its entirety abutting Goldsberry Road. Further, he argues that Lot 5, Unit 1 in its entirety should have been used to determine “front footage” for determining the sufficiency of the petition. The plaintiff asserts that including the lot iri its entirety is consistent with the assessment procedures pursuant to La. R.S. 33:3826.
After a careful review of the applicable statutes, we disagree with the plaintiffs contentions. La. R.S. 33:3822 et seq., clearly and unambiguously provides that only the lots or units abutting the proposed improvements should be included in the calculation to determine if the petition met the requisite 60% of property owners element. Therefore, the 17portion of Lot 5, Unit 1, not abutting the proposed water line project is irrelevant and should not be included in the calculations to determine the sufficiency of the petition. Further, Lots 5 and 8 of Unit 1 already abut existing water lines that afford them direct access to city water. Therefore, they will not be benefitting from the Goldsberry Road Water Line Project.
The trial court did not err in denying the plaintiffs prayer for injunctive relief. The record is void of any evidence that would support a prima facie showing of irreparable injury to the plaintiff. Further, none of the evidence presented showed that the Goldsberry Road Water Line Project was unlawful or a deprivation of constitutional rights. For these reasons, we find that the plaintiffs assignment of error is without merit.
CONCLUSION
For the reasons discussed above, we affirm the trial court’s judgment. Costs of this appeal are assessed to the plaintiff, David Romero.
AFFIRMED.

. Kenneth Ward, Caddo Parish Project Manager, confirmed that a "stub-out” is "a place where you can easily hook a new line.”